Day, J.
The manner these cases come before us, brings-in review the evidence, as well as the law, upon which they were decided by the court below, and are to be determined by this court. Though in some minor respects materially different, they all rest upon the same foundation. In each case, the plaintiffs below sought to compel Bickett to convey to them respectively a city lot. To accomplish this result, each of them sought to enforce the specific performance of alleged contracts based upon the same written instrument, which is not signed by Bickett, the party sought to be charged. If this were all, it would be the end of the-eases: the plaintiffs therein must fail. But they claim that the ^memorandum of their respective contracts, though-signed by another, was in fact the memorandum or contract of Bickett.
Here, then, at the outset, we are met with a question of fact. Of this fact there is no written evidence. The plaintiffs below attempted to establish it wholly by parol. Grant that this essential fact may be proved in that way, it must, in accordance with the settled rule in like cases, be established with clear and convincing certainty; otherwise, both the letter and the reason of the statute of frauds would be-too easily frittered away.
The contract sought to be enforced, it is claimed, is-embodied in the letter of Archbishop Purcell. The letter *412 is not signed by Bickett himself: was it signed by his authority ? or, though signed by J. B. Purcell, was it understood by the parties to be Bickett’s letter, proposition, o£ •contract ? We have given these questions much reflection, and are unable to bring our minds to a clear affirmative answer.
On the contrary, though there is evidence tending to establish the affirmative, the negative hypothesis is much more clearly in harmony with the undoubted facts and circumstances of the cases.
It is true, the archbishop testifies that he made the propositions contained in his letter with Bickett’s consent, and the testimony of the plaintiffs below is to the same effect. This is not denied by Bickett. But he testified and insists -that the letter was the work of the archbishop, and not his; that the propositions it contained were assented to by him •only as propositions of the archbishop, and not as propositions made by or for himself; and that the letter was written and understood in that light only by all the parties. Nor is this view of the transaction inconsistent with .any of the testimony, and it certainly harmonizes with the general circumstances of the case.
It is apparent from the evidence that the archbishop, •during the embarrassment of his title, in utilizing the property, did so as much for the benefit of his poor parishioners .as for his own profit. He leased numerous lots to as many persons at low rates, with the privilege of removing their respective improvements at the expiration of their leases. The kindness of the archbishop encouraged the hopes of the tenants that they might eventually become the owners •of their respective lots at moderate prices. The leases, .added to his other cares, becoming too burdensome to the .archbishop, were sold to Bickett, his agent in the management thereof. Having at length obtained a clear title to the property, and eventually the necessity arising to make its value available, the archbishop sold the entire property ho Bickett.
When the sale became known to the tenants they were *413 alarmed from apprehensions that they could not renew their expiring leases, or purchase their lots, on as favorable-terms as might have been obtained of the archbishop had he retained the property. Moreover, from the fatherly and encouraging relations sustained toward them by him, they were reluctant to acknowledge any other owner of the-property.
Accordingly a meeting of the tenants was called, — at which the mention of the name of Bickett was declared to-be out of order, — which addressed a memorial to the archbishop to obtain terms for renewal leases or sales of their lots.
A committee appointed by the meeting waited upon the-archbishop, and he gave them a verbal reply ; but the committee, insisting upon a written answer, were directed to-call at an hour named, and receive in writing what had been verbally stated. The letter in question was the written answer. But in the meantime Bickett had called upon the archbishop, and it is claimed that the letter was written and delivered to the committee with his consent. But that it was understood to be the letter or proposition of the-archbishop, and not of Bickett, is manifest by concurrent and subsequent facts, about which there is no dispute.
From the opening paragraph of the letter, as well as. from other evidence, it is apparent that 'the letter would, have been written, though Bickett’s casual appearance had not have happened.
Bickett had bought the property, amounting to a large sum, on credit, relying on sales thereof to make his payments ; and at all times proffered his own written propositions to all concerned, at such’ reasonable prices and times of payment as would save himself harmless in his own purchase. The archbishop’s propositions would not do this without his own aid or leniency to Bickett or to the tenants ; and his propositions were made with the-understanding that to the one or the other — all regarding him as a foster-father — the difference between his terms and those of Bickett should be made up by him.
*414 The committee received the letter as the message of tl e -archbishop, and not of Bickett. They still ignored him. Nor was he l’ecognized by the tenants in connection with the letter when it was reported to them. On the contrary, the meeting received it as the answer of 'the archbishop •only, and passed a vote of thanks to him alone.
Bickett, from first to last, both against the archbishop .and the tenants, insisted upon his own written terms, and never consented to act upon the terms of the letter; nor was he ever desired to do so by these four tenants, until .after the archbishop had refused to deal with them and di-ove them over to Bickett.
After having resorted to both the archbishop and Bick•ett, and after both refused to comply with the terms of the letter, as construed by them, they brought suit against the .■archbishop as the pai’ty to-be chai’ged by the written letter. It is true they made Bickett a party to the suit, but charged him only as the party holding the legal title in fraud of their rights. It was not until after their failure, upon full trial ■against the archbishop, that they took leave to amend their petitions as they now stand, charging that the propositions •contained in the letter were Bickett’s, and not the archbishop’s. But the new light that then visited their minds •never dawned in Bickett’s.
From first to last the minds of the parties never met in .agreement that the propositions of the letter were Bickett’s, though for a long time they all concurred in regarding them only as the archbishop’s tei’ms, more favoi’able than Bickett’s.
Many of the tenants acquiesced in the terms of Bickett, which were not widely different from those of the archbishop, and in some instances the archbishop ■ himself assuméd the difference in accordance with his letter.
The internal evidence of the letter itself excludes the idea of Bickett’s responsibility for it. It was written by the archbishop to fulfill a pledge he had made for himself, ■and not for Bickett. It was signed with his own name, .and in no representative capacity other than that of the *415 high office he held, which he designates with his signature as if to exclude the idea of any other agency. It was addressed to his “ dear friends,” and was written in the fatherly spirit which ever characterized his dealings with them to quiet their apprehensions, and to give renewed assurances of his protection and assistance to those who proved themselves, according to his own judgment, worthy ■of his confidence. The propositions, like the assurances, were made upon his own responsibility, and, as manifested in the closing paragraphs of the letter, were to be regarded as “ favors ” extended by him only, and in the capacity in which he signed the letter, and not otherwise; and so the letter seems to have been regarded by all'concerned.
A finding that any part of the letter was Bickett’s, or that it was understood to be so by any of the parties, we think, would be clearly unwarranted by the evidence.
The written memorandum of the contract sought to be enforced can, then, neither be regarded as signed by the party himself now sought to be charged, nor signed for him by any one “ thereunto by him lawfully authorized.” There is, then, no foundation for the relief sought in the court below by these eases.
If, however, the letter had been signed by Biekett himself, the uncertainties of the propositions contained therein would have interposed serious impediments to a recovery. But these, and, in some of the cases, other obstacles to a recovery, need not be noticed, for the judgments in question must be reversed for the reason already stated.
Judgments reversed and causes remanded.
Scott, Chief Judge, Wright, Johnson, and Ashburn, JJ., concurred.